UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

WINNEBAGO TRIBE OF NEBRASKA, a federally recognized Indian Tribe,
Plaintiff,
v.

UNITED STATES DEPARTMENT OF THE ARMY; UNITED STATES DEPARTMENT OF THE ARMY, OFFICE OF ARMY CEMETERIES; CHRISTINE E. WORMUTH,
KAREN DURHAM-AGUILERA, RENEA C. YATES, Lieutenant Colonel PRISCELLA A. NOHLE, in their official capacities,
Defendants.

1:24-cv-78 - CMH-IDD

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff and *Amici* speak forcefully about the injustices done by the Native American boarding school system. As we have stated, this is a matter of national shame. For the victims' kin, and for members of the affected Tribes, it is also no doubt a matter of heartache. But the tragic history of that system does not license this Court to rewrite NAGPRA, which is what Plaintiff and *Amici* are asking the Court to do. Congress sought in NAGPRA to accomplish two goals: (1) to end the looting of Native American gravesites (and provide for the return of Native American remains later unearthed); and (2) to require museums and Federal agencies to document and repatriate their collections of Native American cultural items. NAGPRA's language and legislative history plainly focus on those two goals, and nowhere suggest an intent to require the exhumation of existing gravesites. Plaintiff's (and *Amici's*) attempts to show otherwise are unsuccessful.

**TABLE OF CONTENTS**

SUMMARY ..... 1

ARGUMENT ..... 2

A. Section 3005(a)(4) Does Not Require Exhumation of Gravesites ..... 2

1. Plaintiff misreads the language of Subsection 3005(a)(4) ..... 3

2. The regulations confirm that Plaintiff misreads the language of Subsection 3005(a)(4) ..... 8

a. The 2024 regulations govern ..... 8

b. The regulations confirm that NAGPRA's repatriation requirements only apply to holdings or collections ..... 9

B. The Remains at Carlisle are not a "Holding or Collection" ..... 11

1. Rules prescribing a liberal reading of the complaint are irrelevant ..... 11

2. The ordinary meaning of the words "holding or collection" do not apply to buried remains ..... 12

3. The Indian canon of construction does not authorize the Court to rewrite the statute or ignore its purpose ..... 14

C. The Decisions in *Hawk*, *Geronimo*, and *Thorpe* Confirm that NAGPRA Does Not Mandate Disinterment ..... 16

CONCLUSION ..... 17

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A.U., ex rel. N.U. v. Roane Cnty. Bd. of Educ.*,
501 F. Supp. 2d 1134 (E.D. Tenn. 2007) ....................8

*Bonnichsen v. United States*,
367 F.3d 864 (9th Cir. 2004) ....................6

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ....................10

*Confederated Bands of Ute Indians v. United States*,
330 U.S. 169 (1947) ....................14

*Dougherty v. Mercantile–Safe Deposit & Trust Co.*,
387 A.2d 244 (Md. 1978) ....................12

*Dubin v. United States*,
143 S. Ct. 1557 (2023) ....................4

*Est. of Alcalde v. Deaton Specialty Hosp. Home, Inc.*,
133 F. Supp. 2d 702 (D. Md. 2001) ....................11

*First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*,
882 F.2d 862 (4th Cir. 1989) ....................8

*Fox v. Portico Reality Servs. Off.*,
739 F. Supp. 2d 912 (E.D. Va. 2010) ....................15

*Geronimo v. Obama*,
725 F. Supp. 2d 182 (D.D.C. 2010) ....................1, 16

*Hawk v. Danforth*,
No. 06-C-223, 2006 WL 6928114 (E.D. Wis. Aug. 17, 2006) ....................1, 15, 16

*Ho-Chunk, Inc. v. Sessions*,
894 F.3d 365 (D.C. Cir. 2018) ....................14

*Jones v. U.S. Merit Sys. Prot. Bd.*,
No. 23-1328, 2024 WL 2855029 (4th Cir. June 6, 2024) ....................11, 12

*Koi Nation of N. California v. U.S. Dep't of Interior*,
361 F. Supp. 3d 14 (D.D.C. 2019) ....................14

*Langford v. Joyner*,
62 F.4th 122 (4th Cir. 2023) ....................12

*Little Co. of Mary Hosp. & Health Care Centers v. Shalala*,

165 F.3d 1162 (7th Cir. 1999) ....8

*Little Co. of Mary Hosp. & Health Care Centers v. Shalala*,
994 F. Supp. 950 (N.D. Ill. 1998) ....8

*Louisville & Nashville R.R. Co. v. Wilson*,
51 S.E. 24 (Ga. 1905) ....12

*Meagher v. Driscoll*,
99 Mass. 281 (1868) ....12

*Phillips v. McLaughlin*,
854 F.2d 673 (4th Cir. 1988) ....9

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) ....4

*Pope v. Shalala*,
998 F.2d 473 (7th Cir. 1993) ....8

*Snyder v. Snyder*,
60 How. Pr. 368 (Sup. Ct. NY 1880) ....12

*South Carolina v. Catawba Indian Tribe, Inc.*,
476 U.S. 498 (1986) ....14

*Thorpe v. Borough of Thorpe*,
770 F.3d 255 (3d Cir. 2014) ....1, 15

*Travelers Ins. Co. v. Welch*,
82 F.2d 799 (5th Cir. 1936) ....12

*United States v. Midgett*,
198 F.3d 143 (4th Cir. 1999) ....13

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) ....9

*United States v. Young*,
989 F.3d 254 (4th Cir. 2021) ....13

*Whitman v. Am. Trucking Ass'ns,*
531 U.S. 457 (2001) ....4

*Wright v. Angelone*,
944 F. Supp. 460 (E.D. Va. 1996) ....4

**Statutes**

18 U.S.C § 1170 ....15

25 U.S.C. § 3002 ....10

25 U.S.C. § 3003 .......... 2, 3, 4, 7

25 U.S.C. § 3003(a) .......... 4

25 U.S.C. § 3003(b)(1)(B) .......... 5

25 U.S.C. § 3004(a) .......... 4

25 U.S.C. § 3005 .......... 1, 15

25 U.S.C. § 3005(b) .......... 5

**Rules**

Fed. R. Civ. P. 8 .......... 1, 11

**Regulations**

43 C.F.R. § 10.1(b)(1) (2023) .......... 10

43 C.F.R. pt. 10 .......... 9

**Other Authorities**

Edward A. Hartnett, *Taming Twombly, Even After Iqbal*, 158 U. Pa. L. Rev. 473 (2010) .......... 12

## SUMMARY

Plaintiff is correct that those portions of our moving papers discussing 25 U.S.C. § 3005 focused on § 3005(a)(1) and did not examine § 3005(a)(4). But the latter subsection does not rescue the Complaint. The language and context of subsection 3005(a)(4) shows that it, like subsection 3005(a)(1), is concerned with artifact collections, not with gravesites. And Plaintiff's reading of subsection 3005(a)(4) requires the implausible conclusion that Congress intended to require the "expeditious" exhumation of thousands of gravesites without even a hint, either in the language or the history of the statute, that that was what Congress had in mind.

Plaintiff also fails in its argument that a cemetery is a "holding or collection." The ordinary meanings of those words do not apply to cemeteries. Also, NAGPRA's history and implementing regulations confirm that Section 3005's requirements do not apply to cemeteries. And all efforts to save an untenable statutory interpretation by invoking interpretive rules (*i.e.*, the laxness of FRCP 8's pleading requirements, the rule that motions to dismiss require an open-minded reading of factual allegations, and the Indian canon of statutory construction) are simply not up to the task. The statute does not say what Plaintiff wants it to say.

Plaintiff's efforts to minimize the decisions in *Geronimo v. Obama*, 725 F. Supp. 2d 182 (D.D.C. 2010), *Hawk v. Danforth*, No. 06-C-223, 2006 WL 6928114 (E.D. Wis. Aug. 17, 2006), and *Thorpe v. Borough of Thorpe*, 770 F.3d 255 (3d Cir. 2014), are also unavailing. Plaintiff is certainly correct that none of these cases is a close factual match, and that none is controlling. We never suggested otherwise. But all three cases -- the only cases that have addressed the question -- concluded that NAGPRA's repatriation requirements do not apply to buried remains. Taken together, the cases bear heavily here. Plaintiff's Complaint should be dismissed.

# ARGUMENT

## A. Section 3005(a)(4) Does Not Require Exhumation of Gravesites

Each of the two counts in Plaintiff's Complaint asserts that the remains at issue are part of a "holding or collection" as required by NAGPRA subsection 3005(a)(1). Complaint ¶¶ 256, 271, ECF No. 1 ("Compl."). Thus, as Plaintiff correctly notes, our moving papers focused (in part) on that requirement, rather than on the provisions of subsection 3005(a)(4). But a claim based on subsection 3005(a)(4) fares no better than a claim based on subsection 3005(a)(1), and for many of the same reasons.

Subsection 3005(a)(4) provides:

> (a) REPATRIATION OF NATIVE AMERICAN HUMAN REMAINS AND OBJECTS POSSESSED OR CONTROLLED BY FEDERAL AGENCIES AND MUSEUMS.—
>
> ********************
>
> (4) Where cultural affiliation of Native American human remains and funerary objects has not been established in an inventory prepared pursuant to [25 U.S.C. § 3003], or the summary pursuant to [§ 3004], or where Native American human remains and funerary objects are not included upon any such inventory, then, upon request and pursuant to subsections (b) and (e) and, in the case of unassociated funerary objects, subsection (c), such Native American human remains and funerary objects shall be expeditiously returned where the requesting Indian tribe or Native Hawaiian organization can show cultural affiliation by a preponderance of the evidence based upon geographical, kinship, biological, archaeological, anthropological, linguistic, folkloric, oral traditional, historical, or other relevant information or expert opinion.

With respect to human remains, the subsection applies to those:

1. That are listed on a Section 3003 inventory, but whose cultural affiliation has not been established;

2. That are listed on a Section 3004 summary, but whose cultural affiliation has not been established; or

3. That "are not included upon any such inventory."

In all cases, where a requesting Tribe can demonstrate cultural affiliation (by any of the various means allowed), the subsection requires that "upon request and pursuant to subsections (b) and (e) . . . such Native American human remains and funerary objects shall be expeditiously returned." As Plaintiff acknowledges, these requirements only apply to "remains and objects possessed or controlled by federal agencies and museums." *Id.* But this language does not, as Plaintiff posits, extend beyond remains in holdings or collections.

**1. Plaintiff misreads the language of Subsection 3005(a)(4)**

Plaintiff argues that the remains at Carlisle are "possessed or controlled" by the Army; that they constitute "remains . . . not included upon any such inventory" within the meaning of the Act; and that they therefore should be "expeditiously returned" to a requesting Tribe that can make a showing of cultural affiliation. For four reasons, Plaintiff's reading is untenable.[1]

First, the statute's plain language illustrates that Congress intended "remains . . . not included upon any such inventory" to mean remains in a holding or collection. For one, Congress's use of the phrase "not included upon" encompasses the possibility that the remains could be included on an inventory. And as we have explained, the inventory requirement applies only to holdings and collections. Defs.' Mem. at 9-15. Had Congress intended to create (as Plaintiff posits) a repatriation requirement apart from that which applies to holdings and

[1] Plaintiff also briefly argues that the remains at Carlisle constitute cultural items whose cultural affiliation "has not been established in an inventory prepared pursuant to section 3003." Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 35 at 8 ("Pl.'s Opp'n"). But as we have explained, that language presupposes that the items are subject to the Section 3003 inventory requirements, and the Section 3003 inventory requirements only apply to holdings or collections. Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 31 at 16-17 ("Defs.' Mem.").

collections, it would have said "remains . . . not *subject to* any such inventory." But that is not what Congress said. Further, the context of Section 3005(a)(4) is relevant. *See Dubin v. United States*, 143 S. Ct. 1557, 1566 (2023). A "court's examination of statutory language is guided not by a single sentence or phrase, but by the provisions of the whole law, as well as its object and policy." *Wright v. Angelone*, 944 F. Supp. 460, 466 (E.D. Va. 1996) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987)). Here, subsection (a)(4) is ordered after (a)(1) and (a)(2), which address repatriation of items for which cultural affiliation is established *via* the inventory and summary processes in Sections 3003 and 3004. Read in that context, it is clear Section 3005(a)(4) is continuing to legislate regarding remains and funerary objects covered by Section 3003 and Section 3004. And Sections 3003 and 3004 only apply to "holdings or collections." 25 U.S.C. §§ 3003(a), 3004(a).

Plaintiff's reading, by contrast, assumes (without any contextual support) that Congress intended to hide in one phrase of Section 3005(a)(4) an all-encompassing requirement to return any remains "possessed or controlled" by a federal agency regardless of the Section's or the Act's other provisions. But Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 468 (2001). A much plainer and sensical reading is that, in referencing "remains . . . not included upon any such inventory," Congress was simply referring to remains in "holdings or collections" that did not get captured in a Section 3003 inventory.

And it makes perfect sense that Congress would legislate to address "remains . . . not included upon" an inventory of a holding or collection. There are several situations under the statutory scheme in which disinterred remains in a holding or collection would not end up on a Section 3003 inventory. The first would be remains discovered after 1990 and therefore subject

to Section 3002, not Section 3003. Another would involve a holding or collection whose owner has simply not complied with the inventory requirement. Some state museums or agencies may be unaware that their holdings include Native American remains or artifacts, or be unaware of the requirements of Section 3003. A third scenario would involve owners of a holding or collection who have not completed an inventory. The statute allows five years to do so and empowers the Secretary of the Interior to extend this grace period further. 25 U.S.C. §§ 3003(b)(1)(B), (c). And Plaintiff notes a fourth possibility -- where an inventory was created but, for whatever reasons, particular cultural items were not included or were overlooked. Opposition at 8-9. In short, it is much more likely Congress intended the subject phrase in Section 3005(a)(4) to fill gaps in the inventory-linked repatriation process for holdings and collections than to create a separate, all-encompassing requirement outside of that process.

Second, by its own terms, a tribe's request for return under of Section 3005(a)(4) is subject to Section 3005(b). That subsection provides:

> (b) SCIENTIFIC STUDY.—If the lineal descendant, Indian tribe, or Native Hawaiian organization requests the return of culturally affiliated Native American cultural items, the Federal agency or museum shall expeditiously return such items unless such items are indispensable for completion of a specific scientific study, the outcome of which would be of major benefit to the United States. Such items shall be returned by no later than 90 days after the date on which the scientific study is completed.

Subsection (b) further supports the idea that Congress intended the subject phrase in subsection 3005(a)(4), like subsection 3005(a)(1), to apply only to holdings or collections.

Subsection (b) creates an exception to the repatriation requirement with respect to "items [that] are indispensable for completion of a specific scientific study. . ." 25 U.S.C. § 3005(b). The scientific value of cultural items *held in a museum collection* is likely to be known, or is at

least knowable. The same cannot be said for buried remains. Whether any particular gravesite at the Carlisle cemetery, for example, is of interest to a "specific scientific study" cannot ordinarily be known before the remains are disinterred and examined. Additionally, the required showing that the remains are indispensable for the "completion" of a "specific" scientific study requires that the study in question already be under way. It is difficult to imagine how this could be true with respect to remains that are still buried. Indeed, probably the most famous of all NAGPRA cases, involving the 9000-year-old "Kennewick Man," highlights this very dichotomy.

In *Bonnichsen v. United States*, 367 F.3d 864 (9th Cir. 2004), interested Tribes wanted Kennewick Man's remains returned to the ground, for religious reasons. 367 F.3d at 870 n.8.[2] The scientific community wanted to retain access, for purposes of "scientific inquiry to advance knowledge of distant times*." Id.* at 869. *Bonnichsen* illustrates the fact that scientific study and continued internment are incompatible. Applying subsection 3005(b) – and thus, also, subsection 3005(a)(4) – to buried remains, therefore doesn't make sense. In other words, the language of subsection (b) shows that Congress had in mind remains that have already been disinterred and are thus subject to study.

Third, Congress's use of the word "expeditiously" also supports a conclusion that Congress intended that the phrase "remains . . . not included on any such inventory" apply only to holdings or collections that are subject to the Act's inventory requirements (and not to remains in the ground). Subsections 3005(a)(1) and 3005(a)(4) both require, with respect to remains

[2] After initial analysis had suggested Kennewick Man's uncommonly ancient provenance, his skeletal remains were removed to the Smithsonian Museum of Natural History in Washington for further study. *Id*. at 870.

subject to their provisions, that the agency or museum possessing those remains "shall expeditiously return" them to the affiliated Tribe. The same "expeditious" return requirement is set out in subsections 3005(a)(2), 3005(a)(5), and 3005(b). To use that term -- "expeditiously" -- to refer to the exhumation and reburial of human remains is incongruous. This is an act to be performed not with haste, but with solemnity. If Congress intended in these sections to require exhumation and reburial, we would expect them to say as much and thereby dignify the process. The overarching goal of NAGRPA, after all, is to restore dignity to remains that have been, historically, deplorably disrespected. As just one illustration, if Congress intended to require exhumations, surely it would have directed that Tribal representatives, including religious dignitaries, be permitted to attend. That is what the Army is doing at Carlisle. Compl. Ex. 7, ECF No. 1-8.

Finally, the practical implications of Plaintiff's reading of subsection 3005(a)(4) refutes that reading. The Section refers to remains that are "not included" in a Section 3003 "inventory." If that is not limited to remains that are *subject to* the Act's inventory requirements (albeit not, or not yet, inventoried), then the Section refers to all Native American remains currently resting in almost 200 federally controlled cemeteries throughout the country. *See* Defs.' Mem., ECF No. 31 at 23-25. Further, if subsection 3005(a)(4) is unlimited by any connection to the "holding or collection" language of Section 3003, the repatriation language of subsection 3005(a)(4) would apply not only to federally controlled cemeteries. It would also apply to Native American gravesites located anywhere on federal land -- such as national parks and preserves -- including gravesites created according to the decedent's wishes and according to Tribal beliefs. To read this one phrase in this one subsection of the Act as imposing requirements that would dwarf all

of the requirements that the Act *explicitly* imposes on the Federal Government is simply not tenable. Particularly so given that neither the Act, nor its legislative history, mentions the exhumation of existing graves. Plaintiff's reading thus violates "the most fundamental guide to statutory construction -- common sense." *First United Methodist Church of Hyattsville v. U.S. Gypsum Co*., 882 F.2d 862, 869 (4th Cir. 1989). Subsection 3005(a)(4), like subsection 3005(a)(1), applies to remains in holdings or collections.

**2. The regulations confirm that Plaintiff misreads the language of Subsection 3005(a)(4)**

The Department of the Interior's regulations implementing NAGPRA further undercut Plaintiff's proffered reading of subsection 3005(a)(4).

**a. The 2024 regulations govern**

Plaintiff continues to cite the Interior Department's prior implementing regulations, which were superseded in January 2024. *See*, *e.g*., Pl.'s Opp'n at 17. Elsewhere, Plaintiff cites to the current regulations (*id.*at 30) or argues that the difference is "immaterial." *Id*. at 17. But it is the current regulations that are relevant to the statutory interpretation question here. As we have noted, applying revised regulations creates no retroactivity concerns where the new regulations are interpretive. Defs.' Mem. at 17-18; *see also Little Co. of Mary Hosp. & Health Care Centers v. Shalala*, 994 F. Supp. 950, 957 (N.D. Ill. 1998), *aff'd*, 165 F.3d 1162 (7th Cir. 1999) ("agency rules that merely interpret or clarify, as opposed to effecting a substantive change in, existing law are properly applicable to disputes that arose before they were promulgated" (*citing Pope v. Shalala*, 998 F.2d 473, 482–86 (7th Cir. 1993)); *A.U., ex rel. N.U. v. Roane Cnty. Bd. of Educ*., 501 F. Supp. 2d 1134, 1144 (E.D. Tenn. 2007)). Also, Plaintiff is seeking prospective –

declaratory and injunctive – relief. The Fourth Circuit has held that an order granting such relief with respect to superseded regulations must be vacated as moot. *Phillips v. McLaughlin*, 854 F.2d 673, 674 (4th Cir. 1988) ("Because the district court's decision is based upon an interpretation of a regulation which has been superseded so far as the plaintiff class is concerned and plaintiffs have requested only prospective relief, we vacate the decision of the district court and remand with instructions to dismiss this action as moot.") (citing *United States v. Munsingwear, Inc*., 340 U.S. 36, 39-40 & n.2 (1950)). The 2024 regulations (43 C.F.R. Part 10 (effective January 12, 2024)) apply.

**b. The regulations confirm that NAGPRA's repatriation requirements only apply to holdings or collections**

We have shown that the most reasonable construction of the repatriation requirements in Section 3005(a) (subparts (1) and (4) alike) is that those requirements only apply to remains that are subject to the Act's inventory requirements. In other words, the repatriation requirements only apply to "holdings or collections." Interior's regulations confirm that reading. Section 10.1(b)(1) of the regulations provides:

> (1) These regulations require certain actions by:
>
> (i) Any institution or State or local government agency (including any institution of higher learning) within the United States that receives Federal funds and has possession or control of a holding or collection;
>
> (ii) Any Federal agency that has possession or control of a holding or collection or that has responsibilities on Federal or Tribal lands;
>
> (iii) Indian Tribes on Tribal lands in Alaska and the continental United States; and
>
> (iv) The State of Hawaiʻi Department of Hawaiian Home Lands (DHHL) on Tribal lands in Hawaiʻi.

43 CFR § 10.1(b)(1) (2023). As relevant here, the regulations state that NAGPRA applies to "[a]ny Federal agency that has possession or control of a holding or collection . . . ."[3] If the remains or artifacts in question are not part of a "holding or collection," the statute's repatriation provisions do not apply. As we confirm in section (B) below, the contents of the Carlisle cemetery (or of any cemetery) do not comprise a holding or collection.

Particularly when read in the context of NAGPRA as a whole, we believe that Section 3005(a) plainly does not apply to cemeteries. Nothing in the statute (or for that matter its voluminous legislative history) states or suggests that disinterment of buried remains is part of the Act's repatriation mandate. Given the wording of Section 3005, as discussed above and in our moving papers, analysis ends there. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (footnote omitted). But if the Court finds the Act ambiguous on this point, the Department of the Interior's interpretation is owed substantial deference. We have made this point before, Defs.' Mem. at 31-32, and Plaintiff does not argue otherwise.[4]

Accordingly, if the Court finds that Section 3005 is ambiguous as to whether its

[3] The second clause in subsection 10.1(b)(1)(ii) ("Any Federal agency . . . *that has responsibilities on Federal or Tribal lands*") (emphasis added) relates to the requirements of NAGPRA Section 3002, which sets out detailed responsibilities and rights with respect to Native American cultural items unearthed on Federal or Tribal land after NAGPRA's passage. 25 U.S.C. § 3002.

[4] Plaintiff argues that the Army's interpretation of NAGPRA is not entitled to deference, but does not deny that Interior's interpretation is. Pl.'s Opp'n at 11 n.6. And Plaintiff has not challenged Interior's regulations.

repatriation requirements apply to buried remains, Interior's regulatory determination that those requirements only apply to holdings or collections resolves the ambiguity.

**B. The Remains at Carlisle are not a "Holding or Collection"**

Because subsections 3005(a)(1) and (a)(4) apply only to "holdings or collections," our motion turns on whether the Carlisle cemetery is a "holding" or a "collection." As we have explained, the answer is "no." Nothing in Plaintiff's response demonstrates a different conclusion.

**1. Rules prescribing a liberal reading of the complaint are irrelevant**

Plaintiff first turns to procedure in an effort to rebut our statutory argument. Plaintiff invokes two rules: (1) that complaints are to be liberally construed under the lenient pleading requirement of Fed. R. Civ. P. 8; and (2) that on a motion to dismiss, all factual allegations are accepted as true. Pl.'s Opp'n at 4, 10 (referring to the "the lenient pleading standard in Rule 8 and the requirement to construe all reasonable inferences in favor of the plaintiff"). But those rules are of no assistance where, as here, the issue presented is a question of law. The relevant facts are undisputed; the dispositive fact is that the remains at issue are in the ground. Resolution of Defendants' motion turns solely on the legal question whether NAGPRA Section 3005 requires repatriation of buried remains, and "[t]he court need not . . . accept [the complaint's] conclusions of law." *Est. of Alcalde v. Deaton Specialty Hosp. Home, Inc*., 133 F. Supp. 2d 702, 705 (D. Md. 2001). Liberally construing the complaint can thus have no bearing on the motion. The Fourth Circuit recently emphasized this point in *Jones v. U.S. Merit Sys. Prot. Bd*., No. 23-1328, 2024 WL 2855029 (4th Cir. June 6, 2024). There the court acknowledged that, on a

dismissal motion, the court must "accept all well-pleaded allegations in the complaint as true and draw all inferences in the plaintiff's favor." 2024 WL 2855029, at *10 n.14 (quoting *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023)). But the court went on to hold that where a motion to dismiss challenges the plaintiff's legal theory, the issue is one of law and the complaint is entitled to no special solicitude: "A judge's job on a motion to dismiss is to determine whether the legal theory or theories supporting a complaint are correct, not whether they are merely plausible.". 2024 WL 2855029, at *10 n.4 (quoting Edward A. Hartnett, *Taming Twombly, Even After Iqbal*, 158 U. Pa. L. Rev. 473, 483 (2010)). Because Plaintiff's legal theory here is incorrect, dismissal is mandated, and a liberal reading of the complaint cannot save it.

**2. The ordinary meaning of the words "holding or collection" do not apply to buried remains**

Plaintiff has not meaningfully challenged the fact that the ordinary meaning of the expression "holding or collection" does not apply to the contents of a grave. Indeed, the materials Plaintiff cites argue in our favor. Plaintiff cites an online dictionary that defines a "holding" (partly) as "property (such as land or securities) owned." Pl.'s Opp'n at 11 (citing MERRIAM-WEBSTER DICTIONARY ONLINE, available at https://www.merriam-webster.com/dictionary/holding, last visited June 21, 2024). Fair enough: human remains are rarely if ever thought of as "property." *See*, *e.g.*, *Meagher v. Driscoll*, 99 Mass. 281, 284 (1868); *Louisville & Nashville R.R. Co. v. Wilson*, 51 S.E. 24, 26 (Ga. 1905); *Snyder v. Snyder*, 60 How. Pr. 368 (Sup. Ct. NY 1880); 2 William Blackstone, *Commentaries*, 429). *Dougherty v. Mercantile–Safe Deposit & Trust Co*., 387 A.2d 244, 246 n.2 (Md. 1978); *Travelers Ins. Co. v. Welch*, 82 F.2d 799, 801 (5th Cir. 1936).

Plaintiff cites the same dictionary's definition of "collection" as (in part) "something collected[,]" such as "an accumulation of objects gathered for study, comparison, or exhibition or as a hobby." Pl.'s Opp'n at 12 (citing MERRIAM-WEBSTER DICTIONARY ONLINE, available at https://www.merriam-webster.com/dictionary/collections (last visited June 21, 2024)). We again agree that the quoted definition is telling. When the deceased are laid to rest, *no one* regards the remains as things for "study," "comparison," or "exhibition." Interment is no one's "hobby." Plaintiff accuses the Army of using the Carlisle cemetery as a degrading and misleading attraction. Pl.'s Opp'n at 13, 16, 17, 18. We deny that accusation; visitors to the base are informed about the cemetery's history in an entirely respectful way. But the accusation itself underscores the point that, in normal usage, a cemetery is *not* regarded as a "collection" for exhibit.[5] And "[i]n the absence of a definition from Congress, we accord words in a statute their ordinary, contemporary, common meaning." *United States v. Midgett*, 198 F.3d 143, 145-46 (4th Cir. 1999) (internal citation and quotation marks omitted). Plaintiff agrees. Pl.'s Opp'n at 10 ("Generally, when a statute does not define a term, courts give the term its ordinary meaning" (citing *United States v. Young*, 989 F.3d 254, 259 (4th Cir. 2021)).[6]

---

[5] Plaintiff and *Amici* also speak at length of the shameful history of boarding schools such as that at Carlisle and the regrettable way the remains at Carlisle were, historically, treated. Pl.'s Opp'n at 13-17; Amicus in Supp. of Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 38-1 at 6-12, 16 ("Amicus"). But that history does not change the meaning of the Act's words, and there is no suggestion in the language or legislative history of NAGPRA that Congress was contemplating the history of the Carlisle school (or of any other such school) in drafting and enacting the statute.

[6] Plaintiff argues that, under this reading, "museums and federal agencies could evade their repatriation obligations by simply burying any Native American human remains and other cultural items they did not want to return." Pl.'s Opp'n at 20. Plaintiff's lawsuit raises weighty and solemn matters, but this particular argument is unserious. Any museum attempting such a ruse would be in blatant violation of its obligations because any holdings or collections subject to

### 3. The Indian canon of construction does not authorize the Court to rewrite the statute or ignore its purpose

Plaintiff invokes the Indian canon of construction in support of its reading of "holding or collection." Pl.'s Opp'n at 10-13. There are three answers to this argument.

First, the Indian canon of construction is only available to resolve ambiguities; if there is no ambiguity, the canon does not apply. *Koi Nation of N. California v. U.S. Dep't of Interior*, 361 F. Supp. 3d 14, 49 (D.D.C. 2019), *appeal dismissed sub nom*. *Koi Nation of N. California v. U.S. Dep't of the Interior*, No. 19-5069, 2019 WL 5394631 (D.C. Cir. Oct. 3, 2019) ("[t]he Indian canon of construction 'applies only to statutes that are . . . ambiguous . . . .'" (quoting *Ho-Chunk, Inc. v. Sessions*, 894 F.3d 365, 369 n.4 (D.C. Cir. 2018))). "The canon of construction regarding the resolution of ambiguities in favor of Indians . . . does not permit reliance on ambiguities that do not exist." *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986); *see also Confederated Bands of Ute Indians v. United States*, 330 U.S. 169, 179 (1947) ("we cannot, under the guise of interpretation . . . rewrite congressional acts so as to make them mean something they obviously were not intended to mean").[7]

Thus if, as we argue, the words "holding or collection" are plainly inapplicable to the contents of gravesites, the canon is not relevant.

---

the inventory requirement of Section 3002 are subject to the repatriation requirements of Section 3005.

[7] Plaintiff and *Amici* describe what they regard as inadequacies in the repatriation procedures that the Army has adopted. Pl.'s Opp'n at 28-30; Amicus at 9, 10-14. This is not the forum for that discussion, except to note that if such inadequacies exist (which the Army denies) they would not empower the Court to rewrite NAGPRA in an effort to remedy problems that the Act does not address. Even under the Indian canon, that is a step too far. *Confederated Bands of Ute Indians,* 330 U.S. at 179.

Second, as we argue above and in our moving papers, any ambiguity in the expression "holding or collection" is removed by Interior's regulations. Plaintiff has not challenged Interior's regulations. Plaintiff (Pl.'s Opp'n at 17) notes that the regulatory definition offers a large and non-exhaustive list of the purposes to which a "holding or collection" may be put, but does not refute the facts that: (a) the purposes listed are *all* appropriately applicable to a museum collection, and *not* to the contents of a cemetery; and (b) that the definition is in all respects confined to the term "accumulation" which, as we argue (Defs.' Mem. at 12-14), does not naturally apply to a cemetery.

Third, even if the Indian canon were implicated, "any interpretation must remain faithful to a statute's context and purpose." *Fox v. Portico Reality Servs. Off.*, 739 F. Supp. 2d 912, 922 (E.D. Va. 2010). The purpose of NAGPRA is twofold: (a) to prohibit grave-robbing (18 U.S.C § 1170) and carefully regulate future Native grave disinterments (Section 3002); and (b) to require the return of skeletal remains and associated cultural artifacts in holdings or collections (Section 3005). *Thorpe*, 770 F.3d at 262 (summarizing this twofold purpose). Insofar as NAGPRA is concerned with remains in the ground, the Act requires that they be left there, or that, if removed, the removal be subject to strict requirements. That is why any interpretation of NAGRPA as *requiring* disinterments "has the Act backwards." *Hawk* , 2006 WL 6928114, at *2. That is why such a reading "would thwart the obvious purpose of the statute." *Thorpe*, 770 F.3d at 264. And that is why Plaintiff's reading is contrary to the Act's "context and purpose," a problem that the Indian canon cannot overcome. *Fox*, 739 F. Supp. 2d at 922.[8]

---

[8] Plaintiff makes the obvious point that a respectful disinterment for purposes of repatriation is not the same thing as grave-robbing. Pl.'s Opp'n at 20. But we do not suggest that when

### C. The Decisions in *Hawk*, *Geronimo*, and *Thorpe* Confirm that NAGPRA Does Not Mandate Disinterment

Plaintiff devotes most of its pages to distinguishing *Hawk*, *Geronimo*, and *Thorpe*. Pl.'s Opp'n at 21-28. Because Plaintiff's arguments do not diminish the significance of those decisions, our response will be brief.

Much of what Plaintiff says about *Hawk* is true. Plaintiff might also have pointed out that *Hawk* was a *pro se* case in which the plaintiff did not respond to the motion to dismiss. 2006 WL 6928114 at *1. But Plaintiff can't change the fact that *Hawk* was a case, like this one, in which the plaintiff was concerned about ancestors buried on defendant's property and asserted that NAGPRA required defendants to "care for the grave sites" and "provid[e] proper burials." *Id*. And while the court specifically cited to Section 3002, not Section 3005, the court's conclusion was that "the Act" does not apply "to remains that may be still buried." *Id*. at *2.

As Plaintiff notes, *Geronimo*, like *Hawk*, was a case where the plaintiff did not know exactly where the remains at issue were buried. But that is not what animated the court's discussion of NAGPRA. True, the court notes that plaintiffs there "cite to no provision of NAGPRA that requires a federal agency to engage in an intentional excavation of possible burial sites." But in its next breath (and citing *Hawk*), the court noted that "the plaintiffs do not point to any authority interpreting this or any other section of NAGPRA as requiring an intentional excavation." *Geronimo,* 725 F. Supp. 2d at 187 n.4. The point was not the grave's uncertain location. The problem was "intentional excavation." That is hardly "irrelevant" to Plaintiff's case

---

Congress prohibited grave-robbing it also intended to prohibit respectful disinterments. Instead, we observe that the Act nowhere *requires* respectful disinterments.

here, which seeks to compel intentional excavation. Pl.'s Opp'n at 23. And like plaintiffs in *Geronimo*, Plaintiff here cites no authority finding that NAGPRA requires such a thing.

As with *Hawk* and *Geronimo*, Plaintiff is correct that *Thorpe* is a factually different case from this one. And the precise legal issue the court decided – whether the Borough was a "museum" – is not present here. But as we discussed at some length, *Thorpe* remains instructive because of the court's careful and lengthy explanation of why NAGPRA cannot be used to compel disinterment – and why doing so would be totally at odds with the Act's purposes. We won't repeat that discussion here.

But we will note that Plaintiff is wrong in asserting that the inter-family dispute that gave rise to the *Thorpe* litigation is irrelevant here. Where intentional disinterments have occurred, Section 3002 carefully lays out a hierarchy designed to prevent disputes as to who has rights to the remains at issue. NAGPRA does not contain a similar hierarchy to identify those with rights to require and direct disinterments if Section 3005 can, in fact, be construed to require them. That is another reason why Section 3005 cannot be so construed.

While they are not, as Plaintiff takes pains to point out, controlling precedents, *Hawk*, *Geronimo*, and *Thorpe* all stand for the proposition that NAGPRA does not compel disinterments. No case says otherwise.

**CONCLUSION**

For the foregoing reasons Plaintiff's complaint should be dismissed with prejudice.

Dated: June 21, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JESSICA D. ABER
UNITED STATES ATTORNEY

/s/
REBECCA S. LEVENSON
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3760
Fax: (703) 299-3983
Email: rebecca.s.levenson@usdoj.gov

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

Peter Kryn Dykema
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0482
peter.dykema@usdoj.gov
Phone: (202) 305 0436
Fax: (202) 305 0274

*Counsel for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that I will today file the foregoing using the court's electronic filing system, which will cause service upon all counsel of record.

/s/ *Peter Kryn Dykema*
Peter Kryn Dykema