IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Winnebago Tribe of Nebraska,<br><br>   Plaintiff,<br><br>v.<br><br>Department of the Army,<br>et al.,<br><br>   Defendants. | Civil Action No. 1:24-cv-78 |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Motion to Dismiss.

Two boys, Samuel and Edward, died in 1895 and 1899, respectively, while attending the Carlisle Indian School and were buried on the school's grounds. When the school closed in 1918, Defendant U.S. Army assumed control of the school's former grounds, and today, Samuel and Edward's remains are buried at the Carlisle Post Cemetery. In October 2023, Winnebago sent the Army a letter, alleging the Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. §§ 3001-3013, requires the Army to disinter and repatriate the boys' remains to the tribe. The Army responded in December, asserting NAGPRA does not compel disinterment but suggesting the Office of Army Cemeteries' Disinterment and Return Process could facilitate the disinterment and return of the boys' remains. Winnebago

1

responded by filing this suit on January 17, 2024. Here, Winnebago alleges the Army's refusal violated NAGPRA and seeks declaratory relief stating the Army is subject to NAGPRA and injunctive relief compelling the Army to repatriate the boys' remains.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests a complaint's sufficiency. Nadendla v. WakeMed, 24 F.4th 299, 304 (4th Cir. 2022). In considering such a motion, the Court accepts as true all well-pleaded factual allegations and views the complaint in a light most favorable to the plaintiff. Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The Court does not, however, accord such deference to plaintiffs' legal conclusions. Id. "A complaint that lacks sufficient factual allegations or fails to identify a cognizable legal theory" will not survive a Rule 12(b)(6) motion. Greer v. Gen. Dynamics Info. Tech., Inc., 808 F. App'x 191, 193 (4th Cir. 2020).

Winnebago argues § 3005(a)(4) of NAGPRA compels the Army to disinter and repatriate Samuel and Edwards' remains. That subsection provides:

> (a) Repatriation of Native American Human Remains and Objects Possessed or Controlled by Federal Agencies and Museums
> ***

2

> (4) Where cultural affiliation of Native American human remains and funerary objects has not been established in an inventory prepared pursuant to [25 U.S.C. § 3003], or the summary pursuant to [§ 3004], or where Native American human remains and funerary objects are not included upon any such inventory, then, upon request and pursuant to subsections (b) and (e) and, in the case of unassociated funerary objects, subsection (c), such Native American human remains and funerary objects shall be expeditiously returned where the requesting Indian tribe or Native Hawaiian organization can show cultural affiliation by a preponderance of the evidence based upon geographical, kinship, biological, archaeological, anthropological, linguistic, folkloric, oral traditional, historical, or other relevant information or expert opinion.

§ 3005(a)(4). Accordingly, with respect to human remains "possessed or controlled" by federal agencies and museums, § 3005(a)(4) applies in three circumstances: (1) a § 3003 inventory lists the remains, but their cultural affiliation has not been established (2) a § 3004 summary lists the remains, but their cultural affiliation has not been established, or (3) the remains "are not included upon any such inventory." If any of these three circumstances apply and a requesting tribe can sufficiently demonstrate affiliation, then, "upon request and pursuant to subsections (b) and (e) . . . , such Native American human remains and funerary objects shall be expeditiously returned . . . ." § 3005(a)(4).

Winnebago argues that because the remains at Carlisle are "possessed or controlled" by the Army and constitute "remains . . . not included upon any such inventory" under § 3003, the remains should be "expeditiously returned" to a requesting Tribe

3

that can make a showing of cultural affiliation. Winnebago's interpretation of NAGPRA, however, overreads the Act's reach.

First, § 3005(a)(4) applies to human remains in a holding or collection—not to all remains possessed or controlled by a federal agency. A court's examination of statutory language is guided not by a single sentence or phrase, but by the provisions of the whole law, as well as its object and policy. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 51 (1987)). In NAGPRA, subsection (a)(4) follows (a)(1) and (a)(2). Subsections (a)(1) and (a)(2) address repatriation when the inventory and summary processes set out sections 3003 and 3004 establish an item's cultural affiliation. In context, § 3005(a)(4) continues to concern remains and funerary objects covered by sections 3003 and 3004—sections that apply only to "holdings or collections." §§ 3003(a), 3004(a).

Winnebago, disregarding § 3005(a)(4)'s context within NAGPRA, submits Congress hid a far-reaching requirement in § 3005(a)(4) to return any remains "possessed or controlled" by a federal agency. But Congress does not "hide elephants in mouseholes." Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001). A plainer reading of § 3005(a)(4) is that, in referencing "remains . . . not included upon any such inventory," Congress referred to remains in "holdings or collections" that a § 3003 inventory or a § 3004 summary did not capture—not remains *not subject* to a § 3003 inventory or a §

4

3004 summary. The practical implications of Winnebago's proposed interpretation also refute their reading. If § 3005(a)(4) is untethered to § 3003's "holding or collection" language, § 3005(a)(4) could compel exhumation of tribal graves anywhere on federal land—including those created according to the decedent's wishes or tribal custom. This requirement would dwarf all others NAGPRA explicitly imposes on federal agencies—an untenable reading particularly as neither NAGPRA nor its legislative history contemplates the compulsory disinterment of existing graves.

Having found § 3005(a)(4) applies only to remains in a holding or collection, § 3005(a)(4) does not apply to the graves at the Carlisle Post Cemetery because a cemetery is neither a holding nor collection under NAGPRA. "When a word is not defined by statute, [courts] normally construe it in accord with its ordinary or natural meaning." Smith v. United States, 508 U.S. 223, 228 (1993). The Merriam-Webster online dictionary defines a "collection" as "an accumulation of objects gathered for study, comparison, or exhibition or as a hobby." Collection, https://www.merriam-webster.com/dictionary/collection (last visited July 30, 2024). The examples given are collections of poetry, photographs, and baseball cards. Id. A "holding" is defined as "property (such as land or securities) owned—usually used in plural." Holding, https://www.merriam-webster.com/dictionary/holding (last visited July 30, 2024).

5

These definitions capture the ordinary sense that a "collection" is an accumulation of things, and a "holding" is an accumulation of assets. Both terms apply naturally to a museum or federal agency's inventory of previously excavated remains; neither term applies naturally to graves in a cemetery. The U.S. Department of the Interior's implementing regulations are consistent with these plain meanings,[1] and NAGPRA's legislative history further reflects that Congress did not envision applying NAGPRA's repatriation provisions to cemeteries. See 136 Cong. Rec. S17,173-02 (daily ed. Oct. 26, 1990), 1990 WL 165443 (remarks of Sens. McCain and Inouye) (reflecting on "the difficult issue of the repatriation of Native American human remains and funerary objects from museum collections to Indian tribes"); United States v. Hatcher, 560 F.3d 222, 226 (4th Cir. 2009) (Only when "the terms of a statutory provision are ambiguous" may the Court "consider other evidence to interpret the meaning of the provision, including the legislative history . . . .").

Lastly, as the Fourth Circuit has not addressed NAGPRA's scope, the Court looks to persuasive authority from our sister circuits. Though Thorpe v. Borough of Thorpe, 770 F.3d 255

---

[1] The regulations define a "holding or collection" as "an accumulation of one or more objects, items, or human remains for any temporary or permanent purpose, including: (1) Academic interest; (2) Accession; (3) Catalog; (4) Comparison; (5) Conservation; (6) Education; (7) Examination; (8) Exhibition; (9) Forensic purposes; (10) Interpretation; (11) Preservation; (12) Public benefit; (13) Research; (14) Scientific interest; or (15) Study." 43 C.F.R. § 10.2; see 25 U.S.C. § 3011 (authorizing promulgation of the regulations).

(3d Cir. 2014), presented a different question, the case similarly addressed NAGPRA's scope. In 1957, Patsy Thorpe buried her husband, the famous athlete Jim Thorpe, in Jim Thorpe, Pennsylvania. Id. at 257. Fifty years later, several of Thorpe's descendants sued the Borough of Thorpe under NAGPRA, seeking to disinter Thorpe's remains for reburial near Thorpe's birthplace in Oklahoma. Id. The issue was whether the Borough was a "museum" under § 3003(a), subject to NAGPRA's inventory and repatriation requirements. Id. at 263. The Third Circuit held it was not. Here, no one questions the Army is a federal agency under § 3003(a), but the Third Circuit's reasoning is instructive. The Third Circuit acknowledged that a "literal application of NAGPRA" would conclude the Borough is a museum, but the court held that result would be "demonstrably at odds with the intentions of [NAGPRA's] drafters." Id. at 264 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). The court observed, "as stated in the House Report, '[t]he purpose of [NAGPRA] is to protect Native American burial sites and the removal of human remains.'" Id. at 265 (quoting H.R. Rep. No. 101-877 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4367). Accordingly, applying the Act to order disinterment would run contrary to Congress's intent to protect Native American burial sites.

Here, the same reasoning counsels against using NAGPRA to compel the Army to disinter Samuel and Edward's remains. Such an

7

order would invert a statute designed to respond to the illegal excavation of graves on tribal and Federal lands. NAGPRA's first objective is to protect Native American burial sites and to require excavation of such sites only by permit. While the Court acknowledges Winnebago's interest in possessing Samuel and Edward's remains, the Court will not order the excavation of buried remains where § 3005(a)(4) does not confer such authority.

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

An appropriate Order shall issue.

Alexandria, Virginia
August 20, 2024

*Claude M. Hilton*
Claude M. Hilton
United States District Judge